UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Trevis Bravener, individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>        Plaintiff,<br><br>v.<br><br>QTC Commercial Services, LLC, d/b/a IMX Medical Management Services,<br><br>        Defendant. | Case No.:<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT – CLASS ACTION</u>

Plaintiff Trevis Bravener, individually and on behalf of all others similarly situated, for his Class Action Complaint, bring this action against Defendant QTC Commercial Services, LLC, d/b/a IMX Medical Management Services ("IMX") based on personal knowledge and the investigation of counsel and alleges as follows:

### I.    INTRODUCTION

1.    Between June 2022 and October 2022, an unknown actor gained access to IMX's inadequately protected computer systems. As a result, Plaintiff and the Class Members (as further defined below) have had their personal identifiable information ("PII")[1] and protected health information ("PHI") exposed (the "Data Breach").

2.    In carrying out its business, IMX obtains, collects, uses, and derives a benefit from the PII and PHI of Plaintiff and the Class. As such, Defendant assumed the legal and equitable

---

[1] Personal identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

1

duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

3.      The Data Breach was discovered in September 1, 2022, when Defendant discovered initial indicators of a security incident involving malware on laptop. IMX investigated the attack and found additional malware throughout its network. The investigation confirmed that certain IMX systems containing confidential and personal information had been accessed without authorization from June 2022 to October 2022.

4.      According to IMX, the PII and PHI exposed in the Breach included Social Security numbers and Medical Information ("Personal Information").

5.      Around July 2023, IMX began notifying Plaintiff and Class Members of the Data Breach.

6.      Due to Defendant's negligence, cybercriminals obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

7.      This class action seeks to redress Defendant's unlawful, willful and wanton failure to protect the personal identifiable information of approximately 7,594 individuals that was exposed in a major data breach of IMX's network in violation of its legal obligations.[2]

8.      For the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Personal Information. Plaintiff and Class Members will have to spend time responding to the Breach and are at an immediate, imminent, and heightened risk of all manners of identity theft as a direct and proximate result of

---

[2]    *See*    https://apps.web.maine.gov/online/aeviewer/ME/40/7407c47b-6295-432a-a7f8-54afc0133477.shtml.

the Data Breach. Plaintiff and Class Members have incurred and/or will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Personal Information, loss of privacy, and/or additional damages as described below.

9.    Defendant betrayed the trust of Plaintiff and the other Class Members by failing to properly safeguard and protect their Personal Information and thereby enabling cybercriminals to steal such valuable and sensitive information.

10.    Plaintiff brings this action individually and on behalf of the Class, seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, injunctive relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.    THE PARTIES

11.    Plaintiff Trevis Bravener is a citizen of Montgomery, Texas.

12.    IMX is a fictitious name owned and operated by QTC Commercial Services, LLC ("QTC"). QTC is incorporated in Virginia. IMX's corporate office is located at 1700 Paoli Pike, Malvern, PA 19355.

13.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

14.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.    JURISDICTION AND VENUE

15.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs; there are more than 100 members in the proposed class; and at least one Class Member, including Plaintiff, is a citizen of a state different from Defendant to establish minimal diversity.

16.     Defendant is a citizen of Pennsylvania because its principal place of business is in Malvern, Pennsylvania.

17.     The Eastern District of Pennsylvania has personal jurisdiction over Defendant because it conducts substantial business in this District and collected and/or stored the PII of Plaintiff and Class Members in this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff and the Class Members' claims occurred in this District, including Defendant collecting and/or storing the PII of Plaintiff and Class Members.

## IV.     FACTUAL ALLEGATIONS

*Background*

19.     Defendant provides medical evaluation and review services to insurance carriers, third-party administrators, employers, law firms, and other businesses. In providing these services, Defendant requires the Personal Information of Plaintiff and the Class Members.

20.     Plaintiff and Class Members relied on this sophisticated Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their Personal Information.

21.     Defendant had a duty to adopt reasonable measures to protect the Personal Information of Plaintiff and the Class Members from involuntary disclosure to third parties.

***The Data Breach***

22.     Between June 2022 and October 2022, due to Defendant's failure to maintain an adequate security system, an unknown hacker gained access to Defendant's systems and acquired certain files and information including Plaintiff and Class Members' Personal Information.

23.     Defendant first received notice of this attack in September 1, 2022.

24.     Defendant negligently delayed in responding to the notice and notifying Plaintiff and Class Members of the Data Breach.

25.     On or around late July 2023, Defendant sent Plaintiff and Class Members a notice of the Data Breach ("Notice of Data Breach"). Attached hereto as Exhibit 1.

26.     Defendant admitted in the Notice of Data Breach that an unauthorized actor accessed sensitive information about Plaintiff and Class Members. *Id.*

27.     The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

28.     The unencrypted Personal Information of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed Personal Information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Personal Information of Plaintiff and Class Members.

29.     Defendant was negligent and did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Personal Information for Plaintiff and Class Members.

30.     Because Defendant had a duty to protect Plaintiff's and Class Members' Personal Information, Defendant should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

31.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

32.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[3]

33.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize

---

[3] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).

damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[4]

34.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[5]

35.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that: (i) cybercriminals were targeting big companies such as Defendant, (ii) cybercriminals were ferociously aggressive in their pursuit of companies in possession of significant sensitive information such as Defendant, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

36.    Considering the information readily available and accessible on the internet before the Data Breach and Defendant's involvement in data breach litigation, Defendant, having elected to store the unencrypted Personal Information of Plaintiff and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Personal Information, and Defendant's type of business had cause to be particularly on guard against such an attack.

---

[4] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), available at https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).
[5] U.S. CISA, Ransomware Guide – September 2020, available at https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited Jan. 25, 2022).

37.    Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Personal Information could be accessed, exfiltrated, and published as the result of a cyberattack.

38.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the Personal Information to protect against their publication and misuse in the event of a cyberattack.

***Defendant Acquires, Collects, and Stores the Personal Information of Plaintiff and Class Members***

39.    Defendant acquired, collected, and stored the Personal Information of Plaintiff and Class Members.

40.    Plaintiff and other Members of the Class entrusted their Personal Information to persons or entities who entrusted to Defendant access and control over the highly sensitive Personal Information.

41.    By obtaining, collecting, and storing the Personal Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Personal Information from disclosure.

42.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Personal Information and relied on Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

43.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[6]

44.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

---

[6] See How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited July 17, 2023).

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[7]

45.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks. . . .

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net). . . .

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

---

[7] *Id.* at 3-4.

10

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it. . . .

- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic. . . .[8]

46.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; Remove privilege credentials

**Thoroughly investigate and remediate alerts**
- Prioritize and treat commodity malware infections as potential full comprise

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely

**Build credential hygiene**
- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

---

[8] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited July 17, 2023).

- Apply principle of least-privilege

**Monitor for adversarial activities**
- Hunt for brute force attempts
- Monitor for cleanup of Event logs
- Analyze logon events

**Harden infrastructure**
- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[9]

47.    Given that Defendant was storing the Personal Information of other individuals, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

48.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the Personal Information of Plaintiff and Class Members.

***Securing Personal Information and Preventing Breaches***

49.    Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the Personal Information of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

---

[9] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited July 17, 2023).

50.     Defendant's negligence in safeguarding the Personal Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

51.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Personal Information of Plaintiff and Class Members from being compromised.

52.     The ramifications of Defendant's failure to keep secure the Personal Information of Plaintiff and Class Members are long lasting and severe. Once Personal Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Defendant's Response to the Data Breach is Inadequate***

53.     Defendant was negligent and failed to inform Plaintiff and the Class Members of the Data Breach in time for them to protect themselves from identity theft.

54.     Defendant admitted that it learned of the data breach as early as September 1, 2022. Yet, Defendant did not start notifying affected individuals until almost a year later on or around late July 2023.

55.     During these intervals, the cybercriminals have had the opportunity to exploit the Plaintiff and the Class Member's Personal Information while Defendant was secretly investigating the Data Breach.

***Value of PII***

56.      The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to

$200, and bank details have a price range of $50 to $200.[10] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

57.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

58.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

59.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

60.     One such example of criminals using PII for profit is the development of "Fullz" packages.

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 17, 2023).
[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed July17, 2023).
[12] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 17, 2023).
[13] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed July 17, 2023).

61.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

62.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

63.    That is exactly what is happening to Plaintiff and members of the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

***Plaintiff's Experience***

64.    Plaintiff entrusted his Personal Information to one of IMX's clients, Providence Risk Insurance Company. Providence Risk Insurance Company then entrusted Plaintiff's Personal Information to Defendant.

65.    Plaintiff received Defendant's Notice of Data Breach on July 28, 2023. The Notice stated that Plaintiff's Personal Information, including his Medical Information, was impacted by the Data Breach.

66.     As a result of the Data Breach, Plaintiff's sensitive information may have been accessed and/or acquired by an unauthorized actor. Defendant has not yet provided definitive findings for Plaintiff to know.

67.     As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

68.     As a result of the Data Breach, the confidentiality of Plaintiff's sensitive information has been irreparably harmed. For the rests of his life, Plaintiff will have to worry about when and how his sensitive information may be shared or used to his detriment

69.     Additionally, Plaintiff is very careful about not sharing his sensitive Personal Information. He has never knowingly transmitted unencrypted sensitive Personal Information over the internet or any other unsecured source.

70.     Plaintiff stores any documents containing his sensitive Personal Information in safe and secure locations or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

71.     Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences fear and anxiety and increased concern for the loss of his privacy.

72.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Personal Information being placed in the hands of unauthorized third parties and possibly criminals.

73.     Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Class Face Significant Risk of Continued Identity Theft***

74.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

75.     Defendant negligently disclosed the Personal Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Personal Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Personal Information.

76.     As a result of Defendant's negligence and failure to prevent the Data Breach, Plaintiff and the Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

> a.     The loss of the opportunity to control how their Personal Information is used;
>
> b.     The diminution in value of their Personal Information;
>
> c.     The compromise and continuing publication of their Personal Information;
>
> d.     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

17

      e.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spend researching how to prevent, detect, contest, and recover form identity theft and fraud;

      f.      Delay in receipt of tax refund monies;

      g.      Unauthorized use of stolen Personal Information; and

      h.      The continued risk to their Personal Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Personal Information in their possession.

77.      The fraudulent activity resulting from the Data Breach may not come to light for years.

78.      There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

79.      Defendant's negligence and failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Personal Information and take other necessary steps to mitigate the harm caused by the Data Breach

---

[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed July 17, 2023).

80.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their Personal Information.

81.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's database, amounting to potentially thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

82.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Personal Information of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

83.    To date, Defendant has offered Plaintiff and some Class Members only two (2) years of credit monitoring services. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

84.    The injuries to Plaintiff and Class Members are directly and proximately caused by Defendant's negligence and failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

***Defendant Failed to Adhere to FTC Guidelines***

85.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Personal Information.

86.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[15] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[16]

87.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

        a.        Protect the sensitive consumer information that they keep;

        b.        Properly dispose of PII that is no longer needed;

        c.        Encrypt information stored on computer networks;

        d.        Understand their network's vulnerabilities; and

        e.        Implement policies to correct security problems.

88.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

89.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity

---

[15] 17 C.F.R. § 248.201 (2013).
[16] *Id.*

on the network; and verify that third-party service providers have implemented reasonable security measures.

90.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

91.     Defendant's negligence and failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff and the Class's Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Defendant Failed to Adhere to HIPAA Guidelines***

92.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.

93.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information is properly maintained.

94.     The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a.    Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.    Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.    Failing to ensure compliance with HIPAA security standards in violation of 45 C.F.R. § 164.306(a)(4);

e.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

h.    Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

i.    Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out

their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

j.      Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

95.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

### V.    CLASS ACTION ALLEGATIONS

96.    Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

97.    The Class that Plaintiff seeks to represent is defined as follows:

> All individuals whose PII may have been accessed and/or acquired in the ransomware attack that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and Class Members on or around July 2023 (the "Class").

98.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

99.    Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

100.    **Numerosity (Fed R. Civ. P. 23(a)(1)):** The Class is so numerous that joinder of all members is impracticable. Defendant reported to the Maine Attorney General that 7,594 individuals were impacted by the Data Breach.

101.    **Commonality (Fed. R. Civ. P. 23(a)(2) & (b)(3)):** Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.      Whether and to what extent Defendant had a duty to protect the Personal Information of Plaintiff and Class Members;

b.      Whether Defendant had duties not to disclose the Personal Information of Plaintiff and Class Members to unauthorized third parties;

c.      Whether Defendant had duties not to use the Personal Information of Plaintiff and Class Members for non-business purposes;

d.      Whether Defendant failed to adequately safeguard the Personal Information of Plaintiff and Class Members;

e.      When Defendant actually learned of the Data Breach;

f.      Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Personal Information had been compromised;

g.      Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Personal Information had been compromised;

h.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.      Whether Defendant adequately addressed and fixed the vulnerabilities which

permitted the Data Breach to occur;

j.      Whether Defendant engaged in unfair, unlawful, or deceptive practice by failing to safeguard the Personal Information of Plaintiff and Class Members;

k.      Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.      Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

102.    **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

103.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

104.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately represent and protect the interests of Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is

antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

105.    **Superiority and Manageability (Fed. R. Civ. P. 23(b)(3)):** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

106.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action

alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

107.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

108.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

109.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

110.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

111.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

        a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

        b.    Whether Defendant breached a legal duty to Plaintiff and Class Members to

exercise due care in collecting, storing, using, and safeguarding their PII;

c.       Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.       Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

e.       Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.       Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

g.       Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## VI.    CAUSES OF ACTION

### COUNT I – NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

112.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

113.    Defendant solicited, gathered, and stored the Personal Information Plaintiff and the Class as part of the operation of its business.

114.    Upon accepting and storing the Personal Information of Plaintiff and Class Members, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

115.    Defendant had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

116.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their PII that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

117.    Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive Personal Information.

118.    Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data.

119.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

120.    Defendant had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive PII. Additional duties that Defendant owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Personal Information was adequately secured from impermissible access, viewing, release, disclosure, and publication;

b.    To protect Plaintiff's and Class Members' Personal Information in its possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving their networks and servers; and

d.    To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

121.    Defendant was the only one who could ensure that its systems and protocols were sufficient to protect the PII that Plaintiff and the Class had entrusted to it.

122.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class Members' Personal Information. Defendant breached its duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in its possession;

b.    Failing to protect the Personal Information in its possession using reasonable and adequate security procedures and systems;

c.    Failing to adequately train its employees to not store Personal Information longer than absolutely necessary;

d.    Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information; and

e.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions.

123.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

124.    As a proximate and foreseeable result of Defendant's negligent and/or grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages.

125.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal Information of Plaintiff and Class Members while it was within Defendant's possession and control.

126.    As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies and the payment for credit monitoring and identity theft prevention services.

127.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

31

128.    The damages Plaintiff and the Class have suffered and will suffer were and are the direct and proximate result of Defendant's negligent and/or grossly negligent conduct.

**COUNT II – NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

129.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

***Violation of the FTC Act***

130.    In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy and significant risk of identity theft, are the types of harm that these statutes and their regulations were intended to prevent.

131.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII.

132.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders also form part of the basis of Defendant's duty in this regard.

133.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect consumers PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

134.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se* as Defendant's violation of the FTC Act establishes the duty and breach elements of negligence.

135.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

136.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

*Violation HIPAA*

137.    Under HIPAA, Defendant had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."  Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

138.    Moreover, under HIPAA, Defendant had a duty to render the electronic Private Information that they maintained as unusable, unreadable, or indecipherable to unauthorized individuals. Specifically, the HIPAA Security Rule requires "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."

139.    Plaintiff and Class members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendant inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which—

because of their failure to employ reasonable data security measures for PHI— caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

140.    Under § 17932 of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendant had a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.

141.    Moreover, § 17932(a) of HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."

142.    And § 17932(b) of HITECH states that, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."

***Defendant's Violations Caused Plaintiff and the Class's Injuries***

143.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

34

144.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

145.    Had Plaintiff and the Class known that Defendant did not adequately protect their PII and PHI, Plaintiff and members of the Class would not have, by proxy, entrusted Defendant with their PII and PHI.

146.    Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence per se.

147.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Personal Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Personal Information, entitling them to damages in an amount to be proven at trial.

148.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have experienced fraudulent charges on their financial accounts and suspicious activity on their personal cell phones.

149.    Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Personal Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant's fails to undertake appropriate and adequate measures to protect their PII in their continued possession.

## COUNT III – INVASION OF PRIVACY
### (On Behalf of Plaintiff and the Class)

150.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

151.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

152.    Defendant owed a duty to Plaintiff and Class Member to keep their Personal Information confidential.

153.    Defendant affirmatively and recklessly disclosed Plaintiff and Class Members' Personal Information to unauthorized third parties.

154.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Personal Information is highly offensive to a reasonable person.

155.    Defendant's reckless and negligent failure to protect Plaintiff and Class Members' PII constitutes an intentional interference with Plaintiff and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

156.    In failing to protect Plaintiff and Class Members' Personal Information, Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

157.    Because Defendant failed to properly safeguard Plaintiff and Class Members' Personal Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

158.    Defendant knowingly did not notify Plaintiff and Class Members in a timely

fashion about the Data Breach.

159.     As a proximate result of Defendant's acts and omissions, Plaintiff and the Class Members' private and sensitive Personal Information was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

160.     Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Personal Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

161.     Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard Plaintiff and the Class's Personal Information.

162.     Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff and Class Members' Personal Information.

163.     Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT IV – BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

164.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

165.    By requiring Plaintiff and the Class Members Personal Information to provide accreditation to nursing programs, Defendant entered into an implied contract in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiff and Class Members' Personal Information. In return, Defendant considered and gave accreditation to Plaintiff and Class Members' nursing programs.

166.    Based on this implicit understanding, Plaintiff and the Class accepted Defendant's offers and provided their nursing programs, and by proxy Defendant, with their Personal Information.

167.    Plaintiff and Class members would not have provided their Personal Information to Defendant had they known that Defendant would not safeguard their Personal Information, as promised.

168.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant.

169.    Defendant breached the implied contracts by failing to safeguard Plaintiff and Class Members' Personal Information.

170.    Defendant also breached the implied contracts when it engaged in acts and/or omissions that are declared unfair trade practices by the FTC and violations of HIPAA. These acts and omissions included (i) representing, either expressly or impliedly, that it would maintain adequate data privacy and security practices and procedures to safeguard the Personal Information from unauthorized disclosures, releases, data breaches, and theft; (ii) omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal Information; and (iii) failing to disclose to the nursing programs and the Class at

the time they provided their Personal Information that Defendant's data security system and protocols failed to meet applicable legal and industry standards.

171.    The losses and damages Plaintiff and Class members sustained were the direct and proximate result of Defendant's breach of the implied contract with Plaintiff and Class Members.

## COUNT V – BREACH OF CONFIDENCE
### (On Behalf of Plaintiff and the Class)

172.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

173.    Defendant was fully aware of the confidential nature of the Personal Information of Plaintiff and Class Members that it was provided.

174.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by promises and expectations that Plaintiff and Class Members' Personal Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

175.    Plaintiff and Class members provided their respective Personal Information to their respective nursing programs, and by proxy to Defendant, with the explicit and implicit understandings that Defendant would protect and not permit the Personal Information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

176.    Plaintiff and Class Members provided their Personal Information to their respective nursing programs, and by proxy to Defendant, with the explicit and implicit understandings that Defendant would take precautions to protect their Personal Information from unauthorized access,

acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

177. Defendant voluntarily received, in confidence, Plaintiff and Class members' Personal Information with the understanding that the Personal Information would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

178. Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Plaintiff and Class Members' PII, Plaintiff and Class Members' Personal Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff and Class Members' confidence, and without their express permission.

179. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class members have suffered damages as alleged herein.

180. But for Defendant's failure to maintain and protect Plaintiff and Class Members' PII in violation of the parties' understanding of confidence, their Personal Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the misuse of Plaintiff and Class members' Personal Information, as well as the resulting damages.

181. The injury and harm Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiff and Class members' Personal Information. Defendant knew its data systems and protocols for

accepting and securing Plaintiff and Class Members' Personal Information had security and other vulnerabilities that placed Plaintiff and Class members' Personal Information in jeopardy.

182.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class members have suffered and will suffer injury, as alleged herein, including but not limited to (a) actual identity theft; (b) the compromise, publication, and/or theft of their Personal Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Class Members' Personal Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (g) the diminished value of Plaintiff and Class Members' Personal Information.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff and the Class)

183.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged herein.

184.    A relationship existed between Plaintiff and Class Members and Defendant in which Plaintiff and the Class put their trust in Defendant to protect their Personal Information. Defendant accepted this duty and obligation when it received Plaintiff and the Class Members' Personal Information.

185.    Plaintiff and the Class Members entrusted their Personal Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Personal Information for business purposes only, and refrain from disclosing their Personal Information to unauthorized third parties.

186.    Defendant knew or should have known that the failure to exercise due care in the collecting, storing, and using of individual's Personal Information involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

187.    Defendant's fiduciary duty required it to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff and the Class's information in Defendant's possession was adequately secured and protected.

188.    Defendant also had a fiduciary duty to have procedures in place to detect and prevent improper access and misuse of Plaintiff's and the Class's Personal Information. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Defendant was entrusted with Plaintiff and the Class's Personal Information.

189.    Defendant breached its fiduciary duty that it owed Plaintiff and the Class by failing to case in good faith, fairness, and honesty; by failing to act with the highest and finest loyalty; and by failing to protect the Personal Information of Plaintiff and the Class Members.

190.    Defendant's breach of fiduciary duties was a legal cause of damages to Plaintiff and the Class.

191.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred, and the Data Breach contributed substantially to producing the damage to Plaintiff and the Class.

192.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and the Class are entitled to actual, consequential, and nominal damages and injunctive relief, with amounts to be determined at trial.

**COUNT VII – DECLARTORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

193.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

194.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

195.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and the Class's Personal Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Personal Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his Personal Information and remains at imminent risk that further compromises of their Personal Information will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

196.    Plaintiff and the Class have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure to encrypt Plaintiff's

and the Class's Personal Information, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii) Defendant's failure to delete Personal Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiff and the Class.

197.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owes a legal duty to secure the Personal Information of Plaintiff and the Class;

b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Personal Information; and

c.    Defendant's ongoing breaches of its legal duty continue to cause Plaintiff and the Class harm.

198.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' Personal Information. Specifically, this injunction should, among other things, direct Defendant to:

a.    engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b.    audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c.    regularly test its systems for security vulnerabilities, consistent with industry standards;

d.    implement an education and training program for appropriate employees

44

regarding cybersecurity.

199.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

200.    The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

201.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are a proper representative of the Class requested herein;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages,

attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

    i.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    ii.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    iii.    Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

    iv.    Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

    v.    Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

  vi. Ordering that Defendant conduct regular database scanning and securing checks; and

  vii. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

 d. An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

 e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

 f. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 15, 2023     Respectfully submitted,

            */s/ Randi Kassan*
            Randi Kassan
            **MILBERG COLEMAN BRYSON**
            **PHILLIPS GROSSMAN, PLLC**
            100 Garden City Plaza, Suite 500
            Garden City, New York 11530
            Tel.: (212) 594-5300
            rkassan@milberg.com

# EXHIBIT 1



MEDICAL
MANAGEMENT
SERVICES

A QTC Company

July 28, 2023



9 1 621 ******************AUTO**MIXED AADC 300
TREVIS M BRAVENER

ldıl\|l\|l\|lıılıllıll\|ll\|llılllıl\|ıllılllll\|lıllıllıl

## Notice of Data Breach

Dear Trevis M Bravener,

We are writing to inform you of a security incident that may have involved some of your personal information. IMX Medical Management Services, Inc. (IMX) provides medical evaluation and review services to insurance carriers, third-party administrators, employers, law firms, and other businesses. In providing these services, IMX may receive personal information and/or protected health information from our customers and may have collected information about you when scheduling and performing examinations for Providence Risk Insurance Company. You are receiving this notice because your personal information may have been affected by this incident. Please read this notice carefully to learn more about the incident and what you can do to protect yourself.

### What Happened

On September 1, 2022, IMX discovered initial indicators of a security incident, which involved a single laptop that was found to contain malware possibly as early as June 2022. IMX conducted a preliminary triage investigation, then discovered additional malware indicators on its network. IMX took its systems offline to prevent further impact on customer data and IMX systems. IMX conducted a forensic investigation of this incident and identified the impacted systems. IMX's investigation found that a threat actor gained access to certain IMX systems and devices through October 2022. IMX has not identified any evidence of the threat actor on IMX systems since IMX took its systems offline in October 2022. After identifying the affected systems, IMX undertook an extensive and complex analysis of the affected data to determine the personal information affected by this incident. IMX also notified law enforcement about the incident.

### What Information Was Involved

IMX typically receives information about claimants from IMX's customers through established channels in connection with the medical evaluation services IMX provides, including email and files received via the IMX portal. Email messages may contain personal information of claimants, including medical evaluation information. Based on our investigation, the threat actor had access to the bodies of email messages associated with certain user accounts but did not access or exfiltrate the attachments to those messages. The threat actor also appears to have had access to certain folders on IMX's servers, which could have contained personal information of claimants.

Our investigation has revealed that this incident may have affected the following types of personal information about you: Medical Information.

ELN-17913-621

**What We Are Doing**

IMX took steps to contain the issue and remove the threat actor from the IMX network and conducted a thorough investigation. We blocked the transmission of data into and out of our network to prevent any further unauthorized access to personal information. We also used systems and infrastructure operated by our parent company, QTC Management, Inc. (QTC), to establish a new network to securely process the data of our customers. The QTC network operates separately from the legacy IMX network and, on a going-forward basis, IMX will exclusively use the new QTC-operated network.

**What You Can Do**

We encourage you to carefully review the Additional Resources appendix to this letter, as it contains information about the steps you can take to protect yourself against fraud and identity theft. We are offering all affected individuals two (2) years of complimentary credit monitoring and identity protection services. Please review the enrollment instructions provided below for activating these services. Please note that you must activate these services prior to the enrollment deadline provided with the enrollment instructions.

We encourage you to remain vigilant by reviewing your account statements, credit reports, and explanation of benefits for unauthorized activity. If you believe you may be the victim of identity theft, you should contact your local law enforcement representative, your state attorney general, and/or the Federal Trade Commission.

**More Information.** If you have any questions about this incident, you can contact us at (866) 676-3907, Monday through Friday from 8:00 a.m. to 5:30 p.m. Central Time, excluding major U.S. holidays. We regret any inconvenience this incident may have caused you. IMX takes the protection of your personal information very seriously and has taken steps to prevent a similar incident from occurring again.

Sincerely,

IMX Medical Management Services, Inc.



Enter your Activation Code: ▆▆▆▆▆▆▆▆

Enrolment Deadline: **December 31, 2023**

## Equifax Credit Watch™ Gold

*Note: You must be over age 18 with a credit file to take advantage of the product

## Key Features

- Credit monitoring with email notifications of key changes to your Equifax credit report
- Daily access to your Equifax credit report
- WebScan notifications[1] when your personal information, such as Social Security Number, credit/debit card or bank account numbers are found on fraudulent Internet trading sites
- Automatic fraud alerts[2], which encourages potential lenders to take extra steps to verify your identity before extending credit, plus blocked inquiry alerts and Equifax credit report lock[3]
- Identity Restoration to help restore your identity should you become a victim of identity theft, and a dedicated Identity Restoration Specialist to work on your behalf
- Up to $1,000,000 of identity theft insurance coverage for certain out of pocket expenses resulting from identity theft.[4]

## Enrollment Instructions

Go to *www.equifax.com/activate*

Enter your unique Activation Code of ▆▆▆▆▆▆▆ then click "Submit"

1. **Register:**

   Complete the form with your contact information and click "Continue".

   *If you already have a myEquifax account, click the 'Sign in here' link under the "Let's get started" header.*
   *Once you have successfully signed in, you will skip to the Checkout Page in Step 4*

2. **Create Account:**

   Enter your email address, create a password, and accept the terms of use.

3. **Verify Identity:**

   To enroll in your product, we will ask you to complete our identity verification process.

4. **Checkout:**

   Upon successful verification of your identity, you will see the Checkout Page.
   Click 'Sign Me Up' to finish enrolling.

   ***You're done!***

   The confirmation page shows your completed enrollment.
   Click "View My Product" to access the product features.

[1]WebScan searches for your Social Security Number, up to 5 passport numbers, up to 6 bank account numbers, up to 6 credit/debit card numbers, up to 6 email addresses, and up to 10 medical ID numbers. WebScan searches thousands of Internet sites where consumers' personal information is suspected of being bought and sold, and regularly adds new sites to the list of those it searches. However, the Internet addresses of these suspected Internet trading sites are not published and frequently change, so there is no guarantee that we are able to locate and search every possible Internet site where consumers' personal information is at risk of being traded. [2]The Automatic Fraud Alert feature is made available to consumers by Equifax Information Services LLC and fulfilled on its behalf by Equifax Consumer Services LLC. [3]Locking your Equifax credit report will prevent access to it by certain third parties. Locking your Equifax credit report will not prevent access to your credit report at any other credit reporting agency. Entities that may still have access to your Equifax credit report include: companies like Equifax Global Consumer Solutions, which provide you with access to your credit report or credit score, or monitor your credit report as part of a subscription or similar service; companies that provide you with a copy of your credit report or credit score, upon your request; federal, state and local government agencies and courts in certain circumstances; companies using the information in connection with the underwriting of insurance, or for employment, tenant or background screening purposes; companies that have a current account or relationship with you, and collection agencies acting on behalf of those whom you owe; companies that authenticate a consumer's identity for purposes other than granting credit, or for investigating or preventing actual or potential fraud; and companies that wish to make pre-approved offers of credit or insurance to you. To opt out of such pre-approved offers, visit www.optoutprescreen.com [4]The Identity Theft Insurance benefit is underwritten and administered by American Bankers Insurance Company of Florida, an Assurant company, under group or blanket policies issued to Equifax, Inc., or its respective affiliates for the benefit of its Members. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions.

621

## Additional Resources

**Free Credit Report.** You can obtain a free copy of your credit report once every 12 months from each of the three nationwide credit bureaus. We have provided the contact information for each of the nationwide credit bureaus below. You can also obtain a free credit report by visiting www.annualcreditreport.com or by calling, toll-free, (877) 322-8228.

| Equifax | Experian | TransUnion |
|---|---|---|
| P.O. Box 105069 | P.O. Box 2002 | P.O. Box 2000 |
| Atlanta, GA 30348 | Allen, TX 75013 | Chester, PA 19022-2000 |
| 800-525-6285 | 888-397-3742 | 800-680-7289 |
| www.equifax.com | www.experian.com | www.transunion.com |

If you see anything on your credit report that you do not understand, you should notify the credit bureau that sent you the report immediately. If you find any suspicious activity on your credit report, call your local police or sheriff's office, and file a police report for identity theft. You have a right to obtain a copy of the police report, which you may need to provide to creditors to clear up your records.

**Fraud Alerts.** There are two types of fraud alerts you can place on your credit report to put your creditors on notice that you may be a victim of fraud—an initial alert and an extended alert. You may ask that an initial fraud alert be placed on your credit report if you suspect you have been, or are about to be, a victim of identity theft. An initial fraud alert stays on your credit report for at least one year. You may have an extended alert placed on your credit report if you have already been a victim of identity theft and you have the appropriate documentary proof. An extended fraud alert stays on your credit report for seven years. You can place a fraud alert on your credit report by contacting any of the three national credit reporting agencies.

**Security Freeze.** You have the ability to place a security freeze, also known as a credit freeze, on your credit report free of charge. A security freeze is intended to prevent credit, loans and services from being approved in your name without your consent. To place a security freeze on your credit report, you may use an online process, an automated telephone line, or submit a written request to any of the three credit reporting agencies listed above. The following information must be included when requesting a security freeze (note that, if you are requesting a credit report for your spouse, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past 5 years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, and display your name, current mailing address, and the date of issue.

**Additional Information.** You can learn more about protecting yourself from identity theft and fraud, including how to request that a fraud alert or security freeze be placed on your credit report, from the Federal Trade Commission at http://www.ftc.gov/idtheft. You can also call the FTC at 1-877-IDTHEFT (438-4338) or contact the FTC by mail at Identity Theft Clearinghouse, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, DC 20580. You can obtain information about requesting a fraud alert or security freeze from the nationwide credit bureaus by contacting them using the information provided above.

Your state's attorney general may also have resources about protecting yourself from identity theft and fraud. We encourage you to check the website for your state's attorney general for more information on how to protect yourself and your information.

If you live in any of the following states, please review the information below that pertains to your state.

**For District of Columbia Residents:** You have a right to obtain a security freeze, which restricts access to your credit report. Please review the information provided above to understand how you can request a security freeze. You may also obtain information about preventing and avoiding identity theft from the District of Columbia Office of the Attorney General: District of Columbia Office of the Attorney General, 400 6th Street, NW Washington, DC 20001, (202) 727-3400, https://oag.dc.gov/consumer-protection/consumer-alert-identity-theft.

**For Iowa Residents**: You may report suspected incidents of identity theft to local law enforcement or contact the Iowa Office of the Attorney General: Iowa Office of the Attorney General, Consumer Protection Division, Hoover State Office Building, 1305 E. Walnut Street, Des Moines, Iowa 50319, 515-281-6771, https://www.iowaattorneygeneral.gov/for-consumers/.

**For Maryland Residents**: You may also obtain information about preventing and avoiding identity theft from the Maryland Office of the Attorney General: Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, 1-888-743-0023, www.oag.state.md.us.

**For Massachusetts Residents**: By law, you have a right to obtain a police report filed relating to these incidents (if any), and if you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it. You also have the right to request a security freeze, at no charge, as described above. You may contact and obtain information from the Massachusetts Attorney General at: Office of the Massachusetts Attorney General, One Ashburton Place, Boston, MA 02108, 1-617-727-8400, www.mass.gov/ago/contact-us.html.

**For New York Residents**: You may also obtain information about preventing and avoiding identity theft from the New York Attorney General's Office: Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, https://ag.ny.gov/internet/privacy-and-identity-theft.

**For North Carolina Residents**: You may also obtain information about preventing and avoiding identity theft from North Carolina Attorney General's Office: North Carolina Attorney General's Office, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-877-5-NO-SCAM, www.ncdoj.gov.

**For Oregon Residents**: You may also report suspected identity theft to local law enforcement, including the Oregon Office of the Attorney General: Oregon Office of the Attorney General, Consumer Protection, 1162 Court St. NE, Salem, OR 97301, 1-877-877-9392, https://www.doj.state.or.us/consumer-protection/id-theft-data-breaches/data-breaches/.

**For Rhode Island Residents**: By law, you have a right to obtain a police report filed relating to these incidents (if any), and if you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it. You may contact the Rhode Island Attorney General at: Rhode Island Office of the Attorney General, 150 South Main Street, Providence, RI 02903, 1-401-274-4400, www.riag.ri.gov.

621